**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ADAM COATES HILL | ) |
| 10518 Edgemont Drive | ) |
| Adelphi, MD 20783 | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     v. | ) Civ. No. |
| | ) |
| GEORGE WASHINGTON UNIVERSITY | ) |
| 2121 Eye Street NW | ) |
| Washington, DC 20050 | ) |
| | ) |
|     Serve: Mary Lynn Reed | ) |
|       2100 Pennsylvania Ave, NW | ) |
|       Suite 250 | ) |
|       Washington, DC 20050 | ) |
| | ) |
| DONNA HILL | ) |
| 2121 Eye Street NW | ) |
| Washington, DC 20050 | ) |
| | ) |
| EDWARD LEE | ) |
| 2121 Eye Street NW | ) |
| Washington, DC 20050 | ) |
| | ) |
|     Defendants. | ) |
| ———————————————————— | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff Adam Coates Hill, by his attorney, alleges for his Complaint herein:

### PRELIMINARY STATEMENT

1.    Plaintiff Adam Coates Hill brings this action against his former employer, George

Washington University ("GW"), and his former supervisors at GW, Donna Hill and Edward Lee.

GW hired Mr. Hill on June 18, 2007 as an Executive Coordinator. During his employment, GW

discriminated against Mr. Hill by paying him less wages than similarly situated employees, not

paying him overtime compensation, giving him disparate job assignments, failing to consider
him for a promotion or other positions he was qualified for, and unfairly disciplining him relative
to his coworkers. Mr. Hill was also subjected to racially hostile remarks from his supervisor
Donna Hill. After complaining of the discrimination he was forced to endure, Defendants placed
Mr. Hill on a performance improvement plan ("PIP") and began subjecting Mr. Hill to inhumane
treatment. For example, Defendants would not allow Mr. Hill to use the restroom without first
obtaining written permission from Mr. Lee. In fact, Mr. Hill was reprimanded by Mr. Lee when
Mr. Hill obtained verbal permission, rather than written permission, from the assistant manager
to use the restroom. Eventually, the work conditions became so hostile Mr. Hill was force to
leave his employment with GW due to a medical condition he developed as a result of the
discrimination and hostile working conditions.

2.      Accordingly, this is an action for unlawful discrimination, retaliation, and hostile
work environment on the basis of Mr. Hill's race in violation of Section 1981 of the Civil Rights
Act of 1866, 42 U.S.C. § 1981, *et seq.*, ("Section 1981"), 42 U.S.C. § 2000e, *et seq.* ("Title
VII"), and the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 et seq. ("D.C.
Human Rights Act").

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331 and 28
U.S.C. § 1343(a)(4).

4.      This Court has supplemental jurisdiction over the D.C. Human Rights Acts claims
pursuant to 28 U.S.C. 1367. In addition, Mr. Hill filed his charge of discrimination with the
EEOC, not the D.C. Office of Human Rights. Thus, this court has jurisdiction over the D.C.
Human Rights Act claims, because Mr. Hill did not "file[] a complaint" with the D.C. Office of

Human Rights under D.C. Code § 2-1403.16(a).

5.      Venue is proper in this Court pursuant to the provisions of 28 U.S.C. § 1391(b)(2) as the acts and/or omissions alleged in this Complaint occurred in the District of Columbia. Moreover, the Defendants are found in, reside, or transact business in the District of Columbia.

6.      Mr. Hill received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on December 18, 2015, which allows Mr. Hill to pursue his claims in this U.S. District Court.

## PARTIES AND RELEVANT PERSONS

7.      Plaintiff Adam Hill is an individual who is a resident of Maryland. Mr. Hill is an African American male who was hired as an Executive Coordinator by the George Washington University, and employed there from June 18, 2007 until in or about August 2013. Mr. Hill was an employee of George Washington University as defined under 42 U.S.C. §2000(e).

8.      Defendant George Washington University is an educational institution with its principal place of business located in the District of Columbia. Defendant GW conducts substantial business activities in the District of Columbia, and also conducts business affecting interstate commerce. Defendant GW is an employer defined by 42 U.S.C. §2000(e). Upon information and belief, at all relevant times herein, GW employed more than five-hundred (500) employees at any given moment. At all times relevant, Defendant GW acted by and through its agents, servants, and/or employees within the course and scope of their employment with GW and in furtherance of GW's business.

9.      Defendant Donna Hill (white) is an individual employed by GW in the District of Columbia. At all times relevant herein, Defendant Donna Hill was the Assistant Director of Campus Operations and the supervisor for Mr. Hill. Upon information and belief, Defendant

Donna Hill is a resident of the state of Virginia. At all times relevant herein, Defendant Donna Hill was acting within the scope of her employment as the Assistant Director of Campus Operations at GW.

10.     Defendant Edward Lee (white) is an individual employed by GW in the District of Columbia. At all times relevant herein, Defendant Lee was the Solutions Center Manager and the supervisor for Mr. Hill and was acting within the scope of his employment for GW.

## FACTS COMMON TO ALL COUNTS

11.      Mr. Hill was hired by GW as an Executive Coordinator on or about June 18, 2007. When Mr. Hill was hired, his responsibilities as an Executive Coordinator included working as a help desk technician and providing administrative support.

12.     Mr. Hill's former manager stated that Mr. Hill was a strong performer and was on track for a promotion. In fact, Mr. Hill's annual performance reviews show that he was excelling in his position up until August 2012. This all changed abruptly when Donna Hill became Mr. Hill's supervisor in or about the Fall of 2012. Once Donna Hill became Mr. Hill's supervisor, she immediately subjected Mr. Hill to discrimination and racial hostility. Indeed, Mr. Hill's former manager stated that Donna Hill treated Mr. Hill unfairly, and that race played a motivating factor. Mr. Hill's former manager further stated that Mr. Hill had been "targeted and that he was being treated differently than other staff members."

13.     Donna Hill's discriminatory conduct towards Mr. Hill began immediately when she became Mr. Hill's supervisor.  Specifically, Donna Hill engaged in racially discriminatory practices to Mr. Hill, which often included racially charged comments. Some examples include, without limitation, the following:

(a) In or about the Spring of 2013, Donna Hill stated to Mr. Hill, "*I wouldn't have a problem with my kids dating one of you people*." This statement was

made only after Donna Hill realized Mr. Hill was present when she was making racially charged comments about the racial makeup of the college attended by her child. The comment was made in the Solutions Center (a small office).  Mr. Hill was the only black individual present when Donna Hill made the comment.

(b) In or about the Spring 2013, Donna Hill stated in reference to one of her son's black friends, "more like, *he is a token*." This statement was made in the Solutions Center, a small office. Mr. Hill was the only black individual present when this comment was made.

14.    In addition, Donna Hill took active steps to thwart Mr. Hill's career advancement, despite repeated attempts by Mr. Hill to advance his career. Some instances include, without limitation, the following:

(a) In or about November 2012, Mr. Hill requested training for "crystal reports," which is a software program used by GW for managing databases. Mr. Hill was advised by Defendant Donna Hill that he was not eligible for training because it did not fit within the scope of his position. Despite this instruction from Donna Hill, a similarly positioned white co-worker who only worked part-time was offered the opportunity to participate in a training program.

(b) In or about Aril 2013, Mr. Hill applied for the position of Business Manager. Despite his six years of experience with GW, Mr. Hill did not receive an interview. This position was filled by a white employee.

(c) In or about May 2013, despite his repeated requests for advancement and training, GW failed to inform Mr. Hill of two positions that had become available: (1) the Assistant Manager and (2) Supervisor of the Solutions Center. Instead, GW surreptitiously filled both positions with white employees. The Assistant Manager position was, filled by a white individual who was, in the past, a subordinate to Mr. Hill. The Supervisor of the Solutions Center was filled by a white student who was employed part-time, and who was a subordinate to Mr. Hill at that time. Both individuals received the positions accompanied by a substantial monetary bonus and raise.

(d) In or about May 2013, Mr. Hill applied for another position of Business Manager. Mr. Hill did not receive an acknowledgement of his application. Again, the Business Manager position was filled by a white individual.

15. Donna Hill further discriminated against Mr. Hill in his work duties. Specifically, in an attempt to belittle and demean Mr. Hill, Donna Hill required Mr. Hill to perform tasks well outside the parameters of his position, such as taking out garbage, vacuuming floors, moving furniture, organizing the shop room, and other tasks typically performed by the custodial and facilities staff. In addition, Mr. Hill was not allowed to attend staff birthdays and other common social gatherings, when all of his similarly situated coworkers were permitted to attend. Moreover, Mr. Hill was told by human resources that Donna Hill "was building a case against [him] and that she was trying to get [him] fired."

16. Donna Hill also discriminated against Mr. Hill by subjecting him to disparate disciplinary action. On one particular occasion, the Solutions Center was tasked with recording a professor's class. The audio-video team placed the incorrect microphone in the classroom so the class was not recorded. In fact, it was a recurring problem for the audio-video team to place the incorrect recording equipment in classroom. Rather than discipline the audio-video team, Donna Hill disciplined Mr. Hill with a written warning claiming that the error was a result of Mr. Hill's "incompetence." In contrast, on a separate occasion, a similarly situated coworker of Mr. Hill failed to coordinate the recording of a class session, but received no disciplinary action.

17. On another occasion, Donna Hill excoriated Mr. Hill in front of his coworkers and threatened to write him up for allegedly deleting important documents from the SharePoint software program. Quite the contrary, Mr. Hill did not delete the documents. Instead, Donna Hill later found the documents that she had misplaced. Donna Hill neither apologized nor clarified her mistake to Mr. Hill's coworkers. The discrimination and ridicule by Donna Hill was so severe and pervasive that it altered the conditions of Mr. Hill's workplace.

18. Similarly, Mr. Lee also subjected Mr. Hill to disparate treatment and racial

discrimination in relation to disciplinary actions taken against Mr. Hill. On several occasions, Mr. Lee took disciplinary actions against Mr. Hill for acts or omissions for which multiple individuals had shared responsibility, yet Mr. Hill was the only individual disciplined. Likewise, Mr. Lee would hold closed-door training sessions for the software programs AVO and A+ Networking. Mr. Hill requested inclusion in the training sessions, but his requests were denied by Mr. Lee.

19.     During Mr. Hill's tenure at GW, he never received overtime compensation while comparably positioned white employees would receive significant compensation through overtime.

20.     Due to the discrimination, Mr. Hill also never received a promotion during his entire six (6) year tenure at GW despite repeated attempts to advance his career.

21.     One of Mr. Hill's former coworkers at GW stated that he "believed discriminatory things have happened" at GW and that "there was high turnover among minorities."

**Retaliation**

22.     On or about August 2, 2013, Mr. Hill filed a grievance with GW's Equal Employment Opportunity Office detailing the discriminatory actions taken by GW's employees, Donna Hill and Edward Lee.

23.     On or about August 5, 2013, GW retaliated against Mr. Hill by placing him on a PIP. Donna Hill issued the PIP during Mr. Hill's "Direct Report" with Donna Hill at approximately 3:00pm. Eric Alvarado (employed at that time as the Executive Director of Academic Technologies) and Edward Lee were present during this meeting.

24.     On August 9, 2013, Mr. Hill filed a Charge of Discrimination with the EEOC.

25.     In further retaliation to filing the EEOC Charge, Mr. Lee required that Mr. Hill

obtain written permission from him every time Mr. Hill needed to use the restroom. On such

instance, when Mr. Lee was not present at his desk to provide Mr. Hill with "written permission,"

Mr. Hill obtained verbal permission from the assistant manager to Mr. Lee. When Mr. Lee

learned that Mr. Hill used the restroom without his "written permission," Mr. Lee disciplined Mr.

Hill. Mr. Lee stated in an email on August 12, 2013, "Remember that you need written

permission from either myself or Ben. In the case just now where I was absent, verbal permission

from Ben is not sufficient. You have to get it in writing from him when I am not here."

26.     Again in further retaliation, Mr. Lee would not allow Mr. Hill to leave his desk

without written permission. Pursuant to the PIP, Mr. Hill was only permitted to take his lunch

break between 12:00pm and 1:00pm. On August 19, 2012, Mr. Hill was not permitted to take his

lunch break at the designated time between 12:00pm and 1:00pm, because there were no

employees present to cover his desk. Mr. Hill brought this to the attention of Mr. Lee by email,

with a carbon copy to Ms. Hill. Specifically, Mr. Hill stated in an email at 11:58am, "It's just

Lally and I in the SC and I have to take my break. Please advise on how you'd like me to

proceed." Mr. Hill did not receive a response, and therefore did not take lunch.

27.     Having not received a response to his request to take lunch, coupled with the

enormous work related stress imposed on him by his supervisors' discriminatory actions, Mr.

Hill emailed Donna Hill and Mr. Lee at 12:23pm on August 19, 2014, "I'm feeling very ill at the

moment and I will need to go see my Dr. or urgent care. I'm giving you both a heads up. I will

submit leave and leave my co-workers with information as to open items deliverables." The

subject of the email was "PIP – Emergency Illness."

28.     Contemporaneous to his email, Donna Hill replied, "I cannot respond within a

two minute window. Please text Ed or I when you send these emails if you are only giving us

minutes notice." Mr. Lee responded thirty (30) minutes into his lunch break that "Ben was in the SC by the time I got back in the office at 12:23pm…In my absence, you should have communicated with him and then taken your lunch period." After having been reprimanded for using the rest room without written permission from Mr. Lee, Mr. Hill was certainly not allowed to take lunch without written permission.

29.     Upon information and belief, no white co-workers were required to ask permission to use the restroom. Similarly, upon information and belief, no white co-workers were required to obtain permission before taking lunch.

30.     On August 19, 2013, Mr. Hill went directly from work to a physician who instructed him that he was not able to return to work

31.     On September 3, 2013, Mr. Hill officially went on leave under the Family and Medical Leave Act due to the medical condition developed directly as a result of the racial discrimination and retaliation that Mr. Hill was subjected to.

32.     As a result of GW's racial discrimination and retaliation, Mr. Hill developed a serious medical condition that forced him to stay on extended leave. Accordingly, given the racially hostile and discriminatory environment, Mr. Hill was constructively discharged from his employment with GW in August 2013.

## COUNT I
## DISCRIMINATION AND DISPARATE TREATMENT IN VIOLATION OF TITLE VII
### (Defendant GW)

33.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

34.     Defendants discriminated against Plaintiff on the basis of his race and/or color (black) in violation of Title VII by denying him the same terms and conditions of employment

available to individuals who are not black, including but not limited to, subjecting him to disparate working conditions, disparate compensation, and denying him the opportunity to work in an employment setting free of unlawful harassment. Plaintiff's race and complaints of race-based discriminatory treatment was a motivating and/or determinative factor in connection with Defendants treatment of Plaintiff.

35.     Defendants further intentionally discriminated against Mr. Hill by overlooking Mr. Hill for promotions, refusing to provide Mr. Hill with training opportunities, and failing to provide him with equal compensation. Specifically, GW failed to provide Mr. Hill any overtime compensation when similarly situated white employees would receive overtime compensation.

36.     By virtue of the discriminatory, harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff by the Defendants because of Plaintiff's race and the denial of equal opportunity, terms, conditions, and perquisites of employment, the Defendants violated the laws of the United States of America as set forth in Title VII

37.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

38.     Defendants' violations of Title VII were willful and warrant the imposition of punitive damages.

39.     Plaintiff seeks affirmative relief which may include, but is not limited to: requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation; requiring Defendant's employees and defendants to undergo

discrimination and retaliation training; and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys fees, costs and disbursements of this action.

40.    WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) compensatory damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages, and (5) any other relief the Court deems proper.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII
### (Defendant GW)

41.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

42.    By reason of the foregoing, Defendants retaliated against Plaintiff and thereby violated laws set forth in Title VII,

43.    The harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff, by the Defendants solely because Plaintiff made complaints of discrimination and objected to discriminatory conduct and/or participated in a claim of discrimination, or was a witness to discrimination; constitutes denial of equal opportunity, terms, conditions, and perquisites of employment and is retaliation with the meaning of Title VII.

44.    Mr. Hill engaged in statutorily protected activity when he exercised his Title VII rights by filing a complaint with the EEOC. In addition, before filing a complaint with the EEOC, Mr. Hill made a good faith effort to exhaust the remedies his employer provided to address the situation. Mr. Hill filed a complaint with GW's EEOO office, but his claim was never investigated.

45.    After filing the initial complaint with EEOO office, Mr. Hill was retaliated against

by Donna Hill when he was placed on a PIP. It was not claimed that the PIP was implemented as a result of any specific work-performance deficiency, but was rather in direct retaliation for Mr. Hill's complaints of discrimination and his filing a complaint with GW's EEOO office. The PIP was instituted only three days after Mr. Hill filed his discrimination complaint with GW.

46.     After filing a complaint with the EEOC, Mr. Hill was retaliated against further when Mr. Lee started requiring Mr. Hill to obtain written consent before getting up from his desk for any reason, even to use the restroom. In further retaliation, Mr. Hill was not allowed to take a lunch break on at least one occasion.

47.     Three days after Mr. Hill filed his complaint with the EEOC, Mr. Hill was reprimanded for obtaining verbal consent from a supervisor other than Mr. Lee, to use the restroom instead of obtaining written consent from Mr. Lee. There is no indication that this absurd rule was the result of Mr. Hill's work performance and can only be explained as retaliation for Mr. Hill filing a complaint with the EEOC.

48.     As a result of Defendants' harassing, reckless, unlawful, wanton and malicious retaliatory conduct, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs.  Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

49.     Defendants' retaliation in violation of Title VII was willful and warrant the imposition of punitive damages.

50.     Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring defendant's employees and defendants to undergo

harassment, discrimination and retaliation training, and any other equitable relief as the Court

deems appropriate.

51.     WHEREFORE, Plaintiff prays for relief in the form of a judgment against

Defendants, jointly and severally, by awarding (1) damages; (2) equitable relief, including back

pay and front pay; (3) costs and attorney's fees; (4) punitive damages; and (5) any other relief the

Court deems proper.

**COUNT III**
**DISPARATE TREATMENT IN VIOLATION OF 42 U.S.C. § 1981**
**(All Defendants)**

52.     Plaintiff realleges and incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint as if fully set forth herein.

53.     Defendants discriminated against Plaintiff on the basis of his race and/or color

(black) in violation of 42 U.S.C. § 1981 by denying him the same terms and conditions of

employment available to individuals who are not black, including but not limited to, subjecting

him to disparate working conditions, providing him with disparate compensation, and denying

him the opportunity to work in an employment setting free of unlawful harassment. Plaintiff's

race and complaints of race-based discriminatory treatment was a motivating and/or

determinative factor in connection with Defendants treatment of Plaintiff.

54.     Defendants further intentionally discriminated against Mr. Hill by overlooking

Mr. Hill for promotions, refusing to provide Mr. Hill with training opportunities, and failing to

provide him with equal compensation. In particular, GW failed to provide Mr. Hill any overtime

compensation when similarly situated white employees would receive overtime compensation.

55.     By virtue of the discriminatory, harassing, reckless, wrongful, willful and

malicious treatment of the Plaintiff by the Defendants because of Plaintiff's race and the denial

of equal opportunity, terms, conditions, and perquisites of employment, the Defendants violated the laws of the United States of America as set forth in 42 U.S.C. § 1981.

56.     As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless, and until, the Court grants the relief requested herein.

57.     Defendants' violations of Section 1981 were willful and warrant the imposition of punitive damages.

58.     By virtue of the foregoing, Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendant's employees and defendants to undergo discrimination and retaliation training, and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys fees, costs and disbursements of this action.

59.     Through their discriminatory conduct, Defendants deprived Mr. Hill of his right to make and enforce contracts on the same terms as enjoyed by white persons in violation of 42 U.S.C. § 1981.

60.     WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages; and (5) any other relief the Court deems proper.

## COUNT IV
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 1981
### (All Defendants)

61.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

62.     By reason of the foregoing, defendants have violated Section 1981 by subjecting Mr. Hill to a racially hostile environment.

63.     During Plaintiff's employment, a severe and pervasive hostile environment existed. Donna Hill made racially charged comments, refused to let Mr. Hill participate in certain training programs, and spoke poorly of Mr. Hill to other employees thereby creating a racially hostile environment. Donna Hill's racial hostility against Mr. Hill was pervasive and regular. Mr. Hill dealt with her racially charged comments and hostile behavior on a daily basis.

64.     Defendant GW fostered, accepted, ratified, and/or otherwise failed to prevent or to remedy a hostile work environmental that included, among other things, severe and pervasive harassment of Plaintiff because of his race and/or color. Respondeat superior liability further exists because Donna Hill was Mr. Hill's supervisor or manager, and therefore an agent of GW.

65.     The discriminatory, harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff by Defendants because of his race and the denial of equal opportunity, terms, conditions, and perquisites of employment created a hostile work environment of racial harassment and were in violation thereof. Plaintiff's race and complaints of race-based discriminatory treatment was a motivating and/or determinative factor in connection with Defendants treatment of Plaintiff.

66.     As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred

attorneys' fees and costs.  Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless, and until, the Court grants the relief requested herein.

67.     Defendants' violations of Section 1981 were willful and warrant the imposition of punitive damages.

68.     By virtue of the foregoing, Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendant's employees and defendants to undergo discrimination and retaliation training, and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys' fees, costs and disbursements of this action.

69.     Through their discriminatory conduct, Defendants deprived Mr. Hill of his right to make and enforce contracts on the same terms as enjoyed by white persons in violation of 42 U.S.C. § 1981.

70.     WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages; and (5) any other relief the Court deems proper.

## COUNT V
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981
### (All Defendants)

71.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

72.     The harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff,

by the Defendants solely because Plaintiff made complaints of discrimination and objected to

discriminatory conduct and/or participated in a claim of discrimination, or was a witness to

discrimination; constitutes denial of equal opportunity, terms, conditions, and perquisites of

employment and is retaliation with the meaning of Section 1981

73.     Mr. Hill engaged in statutorily protected activity when he exercised his Title VII

rights by filing a complaint with the EEOC. In addition, before filing a complaint with the

EEOC, Mr. Hill made a good faith effort to exhaust the remedies his employer provided to

address the situation. Mr. Hill filed a complaint with GW's EEOO office, but his claim was

never investigated.

74.     After filing the initial complaint with EEOO office, Mr. Hill was retaliated against

by Donna Hill when he was placed on a PIP. The PIP was not implemented as a result of any

specific deficiency in work performance, but was rather a direct retaliation for Mr. Hill lodging

complaints of discrimination and his filing a complaint with GW's EEOO office. The PIP was

instituted only three days after Mr. Hill filed his discrimination complaint against GW.

75.     After filing a complaint with the EEOC, Mr. Hill was retaliated against further

when Mr. Lee started requiring Mr. Hill to obtain written consent before getting up from his desk

for any reason, even to use the restroom. In further retaliation, Mr. Hill was not allowed to take a

lunch break on at least one occasion.

76.     Three days after Mr. Hill filed his complaint with the EEOC, Mr. Hill was

reprimanded for obtaining verbal consent from a supervisor other than Mr. Lee, to use the

restroom instead of obtaining written consent from Mr. Lee. There is no indication that this

absurd rule was the result of Mr. Hill's work performance and can only be explained as

retaliation for Mr. Hill filing a complaint with the EEOC.

77.     As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs.  Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless, and until, the Court grants the relief requested herein.

78.     Defendants' violations of Section 1981 were willful and warrant the imposition of punitive damages.

79.     By virtue of the foregoing, Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendant's employees and defendants to undergo discrimination and retaliation training, and any other equitable relief as the Court deems appropriate, compensatory damages, attorney's fees, costs and disbursements of this action.

80.     Through their discriminatory conduct, Defendants deprived Mr. Hill of his right to make and enforce contracts on the same terms as enjoyed by white persons in violation of 42 U.S.C. § 1981.

81.     WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) compensatory damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages; and (5) any other relief the Court deems proper.

## COUNT VI
## DISPARATE TREATMENT IN VIOLATION OF THE D.C. HUMAN RIGHTS ACT
### (All Defendants)

82.     Plaintiff realleges and incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint as if fully set forth herein.

83.     Defendants discriminated against Plaintiff on the basis of his race and/or color (black) in violation of the D.C. Human Rights Act by denying him the same terms and conditions of employment available to individuals who are not black, including but not limited to, subjecting him to disparate working conditions, providing him with disparate compensation, and denying him the opportunity to work in an employment setting free of unlawful harassment. Plaintiff's race and complaints of race-based discriminatory treatment was a motivating and/or determinative factor in connection with Defendants treatment of Plaintiff.

84.     Defendants further intentionally discriminated against Mr. Hill by overlooking Mr. Hill for promotions, refusing to provide Mr. Hill with training opportunities, and failing to provide him with equal compensation. In particular, GW failed to provide Mr. Hill any overtime compensation when similarly situated white employees would receive overtime compensation.

85.     By virtue of the discriminatory, harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff by the Defendants because of Plaintiff's race and the denial of equal opportunity, terms, conditions, and perquisites of employment, the Defendants violated the D.C. Human Rights Act.

86.     As a direct and proximate result of Defendants' violation of the D.C. Human Rights Act, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless, and until, the Court grants the relief requested herein.

87.     Defendants' violations of the D.C. Human Rights Act were willful and warrant the imposition of punitive damages.

88.     Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendant's employees and defendants to undergo discrimination and retaliation training, and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys' fees, costs and disbursements of this action.

89.     WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages; and (5) any other relief the Court deems proper.

**COUNT VII**
**HOSTILE WORK ENVIRONMENT IN VIOLATION**
**OF THE D.C. HUMAN RIGHTS ACT**
**(All Defendants)**

90.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

91.     During Plaintiff's employment, a severe and pervasive hostile environment existed in violation of the D.C. Human Rights Act. Donna Hill made racially charged comments, refused to let Mr. Hill participate in certain training programs, and spoke poorly of Mr. Hill to other employee thereby creating a racially hostile environment. Donna Hill's racial hostility against Mr. Hill was pervasive and regular. Mr. Hill dealt with her racially charged comments and hostile behavior on a daily basis.

92.     Defendant GW fostered, accepted, ratified, and/or otherwise failed to prevent or to remedy a hostile work environmental that included, among other things, severe and pervasive harassment of Plaintiff because of his race and/or color. Respondeat superior liability further exists because Donna Hill was Mr. Hill's supervisor or manager, and therefore an agent of

Defendant GW.

93.     The discriminatory, harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff by the Defendants because of his race and the denial of equal opportunity, terms, conditions, and perquisites of employment created a hostile work environment of racial harassment and were in violation thereof. Plaintiff's race and complaints of race-based discriminatory treatment was a motivating and/or determinative factor in connection with Defendants treatment of Plaintiff.

94.     As a direct and proximate result of Defendants' violation of the D.C. Human Rights Act, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless, and until, the Court grants the relief requested herein.

95.     Defendants' violations of the D.C. Human Rights Act were willful and warrant the imposition of punitive damages.

96.     Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendant's employees and defendants to undergo discrimination and retaliation training, and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys' fees, costs and disbursements of this action.

97.     WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages; and (5) any other relief the Court deems proper.

**COUNT VIII**
**RETALIATION IN VIOLATION OF THE D.C. HUMAN RIGHTS ACT**
**(All Defendants)**

98.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

99.    The harassing, reckless, wrongful, willful and malicious treatment of the Plaintiff, by the Defendants solely because Plaintiff made complaints of discrimination and objected to discriminatory conduct and/or participated in a claim of discrimination, or was a witness to discrimination; constitutes denial of equal opportunity, terms, conditions, and perquisites of employment and is retaliation with the meaning of the D.C. Human Rights Act.

100.    Mr. Hill engaged in statutorily protected activity when he exercised his rights by filing a complaint with the EEOC. In addition, before filing a complaint with the EEOC, Mr. Hill made a good faith effort to exhaust the remedies his employer provided to address the situation. Mr. Hill filed a complaint with GW's EEOO office, but his claim was never investigated.

101.    After filing the initial complaint with EEOO office, Mr. Hill was retaliated against by Donna Hill when he was placed on a PIP. The PIP was not implemented as a result of any specific deficiency in work performance, but was rather a direct retaliation for Mr. Hill's complaints of discrimination and filing a complaint with GW's EEOO office. The PIP was instituted only three days after Mr. Hill filed his discrimination complaint against GW.

102.    After filing a complaint with the EEOC, Mr. Hill was retaliated against further when Mr. Lee started requiring Mr. Hill to obtain written consent before getting up from his desk for any reason, even to use the restroom. In further retaliation, Mr. Hill was not allowed to take a lunch break on at least one occasion.

103.    Three days after Mr. Hill filed his complaint with the EEOC, Mr. Hill was

reprimanded for obtaining verbal consent from a supervisor other than Mr. Lee, to use the restroom instead of obtaining written consent from Mr. Lee. There is no indication that this absurd rule was the result of Mr. Hill's work performance and can only be explained as retaliation for Mr. Hill filing a complaint with the EEOC.

104.    As a direct and proximate result of Defendants' violation of the D.C. Human Rights Act, Plaintiff has suffered economic and non-economic damages set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants discriminatory and retaliatory acts unless, and until, the Court grants the relief requested herein.

105.    Defendants' violations of the D.C. Human Rights Act were willful and warrant the imposition of punitive damages.

106.    Plaintiff seeks affirmative relief which may include, but is not limited to, requiring Defendants to post the avenues to address complaints of workplace harassment, discrimination, and retaliation, requiring Defendant's employees and defendants to undergo discrimination and retaliation training, and any other equitable relief as the Court deems appropriate, compensatory damages, attorneys fees, costs and disbursements of this action.

107.    WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendants, jointly and severally, by awarding (1) compensatory damages; (2) equitable relief, including back pay and front pay; (3) costs and attorney's fees; (4) punitive damages; and (5) any other relief the Court deems proper.

## PRAYER FOR RELIEF

108.    WHEREFORE, Plaintiff prays for relief in the form of a judgment against Defendant awarding punitive damages and any other relief the Court deems proper and just.

Plaintiff prays for judgment against Defendants against Defendants, jointly and severally, by

awarding (1) compensatory damages; (2) equitable relief, including back pay, and reinstatement

or front pay; (3) costs and attorney's fees; (4) punitive damages, and (5) any other relief the

Court deems proper

## JURY AND TRIAL DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

/s/ Brendan J. Klaproth
_____
Brendan J. Klaproth (D.C. Bar No. 999360)
Klaproth Law PLLC
406 5th Street NW, Suite 350
Washington, DC 20001
Telephone: 202-618-2344
Email: Bklaproth@klaprothlaw.com
*Attorney for Plaintiff*
